STALKER *v.* OREGON SHORT LINE RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF IDAHO.

No. 225.   Argued April 24, 1912.—Decided May 27, 1912.

The act of March 3, 1875, 18 Stat. 482, c. 152, granting rights of way and station grounds for railroads through the public lands was a grant *in præsenti* of lands to be thereafter identified. *Railroad Co.* v. *Jones,* 177 U. S. 125.

The right of way becomes definitely located by actual construction, which is unmistakable evidence and notice of appropriation.

A selection and location of station grounds under the act of March 3, 1875, filed with the Secretary of the Interior after construction of the

railroad, is subject to approval by the Secretary, but the approval relates back to the date of filing and thereupon the selection becomes superior to the intervening claim of an entryman initiated while the selection was pending approval. *Northern Pacific R. R. Co.* v. *Doughty*, 208 U. S. 251, where the station grounds selection was made prior to actual construction of the railroad, distinguished.

The construction now given to the act of March 3, 1875, is in accordance with the settled practice of the Land Department; any other construction would defeat the purpose of Congress in regard to encouraging the building of railroads through the public lands.

The failure of a subordinate of the Land Department to comply with the regulations of the department and note selections properly made by a railroad company cannot affect the rights of the company and permit the entry of the land pending approval of the selections by the Secretary. *Van Wyck* v. *Knevals*, 106 U. S. 360.

A patent, issued to an entryman whose claim was initiated while the selection of a railroad company was pending for approval, is not an adjudication, but if, as in this case, the selection is approved, such a patent is issued in violation of law and is inoperative to pass title.

16 Idaho, 362, affirmed.

THE facts, which involve the construction of the act of March 3, 1875, granting station grounds on the public lands to railroad companies, and the conflicting rights of a company claiming thereunder and an entryman, are stated in the opinion.

*Mr. Carl A. Davis*, for plaintiffs in error, submitted.

*Mr. Maxwell Evarts*, with whom *Mr. P. L. Williams* and *Mr. A. A. Hoehling, Jr.*, were on the brief, for defendant in error.

MR. JUSTICE LURTON delivered the opinion of the court.

This was an action brought by the railroad company under a statute of the State of Idaho to quiet title to four certain lots in the town of Meridian, Idaho. The judgment in the trial court for the railroad company was affirmed in the Supreme Court of the State.

The defendant in error, as successor in title to the Idaho Central Railway Company, claims that the property in question is a part of the station grounds granted to its predecessor under the act of Congress of March 3, 1875, which grant in part conflicts with a preëmption entry made by one Joseph G. Reed, under whom the plaintiffs in error claim. The lands in question had been surveyed and were open for entry long prior to the in-. itiation of either of the claims here involved. The conflicting rights arose in this way: The Idaho Central Railway was duly qualified under the act of Congress of 1875 . to acquire a right of way and station grounds. In June, 1887, its directors formally adopted a route between Nampa and Boise City, which corresponded precisely with the route upon which the railroad was later constructed. This adoption was followed up by the filing of profile maps, which were approved by the Secretary of the Interior on February 17, 1888, and sent back to the proper land office at Boise City. These maps did not include grounds for station purposes. By September 1, 1888, the railroad was constructed along the route first adopted, and at that date was in actual operation. On September 12, 1888, the company filed in duplicate with the Register of the Land Office at Boise City, a plat of ground adjacent to its right of way, desired for station purposes, which selection included the lots here in controversy. This plat was received by the Secretary of the Interior on September 20, 1888, and approved on December 15, 1888. A copy was then transmitted to the register at Boise City. That official received it, but failed and neglected to "note the same upon the plats in the said land office," as it was his duty to do, and it is now stipulated that it has since been lost or mislaid and cannot be found. A blue print of the original map of the station grounds as selected by the plaintiff, with its certificates and endorsements, was stipulated into the record.

The plaintiffs in error claim through Joseph G. Reed, a qualified entryman, who on October 18, 1888, filed a pre-emption claim upon a quarter section adjacent to the railroad right of way. Later he made final proofs, and, on August 4, 1891, a patent issued. This preëmption included about twelve acres of the ground which the railroad company had theretofore selected for station purposes. There is no evidence of occupation of the portion here involved, and no plea of innocent purchaser, for value, without notice. The question was decided by the state court upon the rights resulting from the facts stated.

The case must turn upon the interpretation of the act of Congress of March 3, 1875, 18 Stat. 482, c. 152. The relevant sections are the first and fourth, which are as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station-buildings, depots, machine shops, side-tracks, turn-outs, and water-stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road.

\*    \*    \*    \*    \*    \*    \*    \*

"SEC. 4. That any railroad company desiring to secure the benefits of this act, shall, within twelve months after

the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: *Provided*, That if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

The uniform construction of this act has been that it is a grant "*in præsenti* of lands to be thereafter identified." *Jamestown & N. Railroad* v. *Jones*, 177 U. S. 125. In that case the question was whether the right of way became definitely located by the actual construction of the railroad, or only upon the filing of a map of location, which was much later. The conclusion was that by the actual construction of the railroad the boundaries of the grant were fixed by the rule of the statute, which granted a strip one hundred feet wide on each side of the center of the track. That had been the construction of the act by the Interior Department, and was followed by the court below. Mr. Justice McKenna, for this court, said (p. 131): "The ruling gives a practical operation to the statute, and we think is correct. It enables the railroad company to secure the grant by an actual construction of its road, or in advance of construction by filing a map [of its road] as provided in section four. Actual construction of the road is certainly unmistakable evidence and notice of appropriation." It was therefore held that an entry made after construction but before filing a map of location was subject to the prior right of the railroad.

Possibly station grounds might also have been secured

by the actual marking of the boundaries and the construction of station houses, side tracks, etc.   This we need not decide.   But the fourth section of the act provides a method for securing the benefits of the act in advance of actual construction.

Prior to the initiation of any right here involved the Land Department put in force certain regulations to be followed by railroad companies desiring to secure the benefits of a grant in advance of actual construction, as provided by the fourth section of the act.   One of these required that upon the location of any section, not exceeding twenty miles in length, the company should file with the register of the land district in which the land lay "a map for the approval of the Secretary of the Interior, showing the termini of such portion and its route over the public lands," etc.   Another of these departmental regulations provided that "if the company desires to avail itself of the provisions of the law, which grants the use of ground adjacent to the right of way for station buildings   .   .   .   it must file for approval, in each separate instance, a plat showing in connection with the public surveys, the surveyed limits and area of the grounds desired."   These regulations require that "a copy" of the approved map of "definite location," and of the "approved plat of grounds selected by a company, under the act in question, for station purposes," shall be transmitted to the register of the land office where the land lies.   Upon the receipt of the map of alignment, the land office is required "to mark upon the town-ship plats the line of the route of the road as laid down on the map," and to note in pencil on the tract books opposite the tract of public land cut by said lines of railroad, "that the same is disposed of subject to the right of way," etc., and to write upon the face of any certificate disposing of said lands, after the filing of such approved map of location, "that it is allowed subject to the right of way."   A like duty is

put upon the register when an approved station ground plat is received.

The plat of the station grounds selected by the railroad company in this case was filed in the local land office on September 12, 1888, and reached the Secretary of the Interior on September 20, 1888. Both dates are antecedent to the filing of the preëmption claim. But the selection pended in the office of the Secretary of the Interior until December 15, 1888, on which date it was approved. While thus pending the preëmption right of Reed was initiated.

There can be no doubt that the provisions of the fourth section, for securing in advance of construction the benefits of the act, have application to the station grounds, as well as to the right of way proper. The "benefits" to be secured cover one as well as the other. The prerequisites for securing either right, in advance, is the filing of a map of location, whether it be for a right of way or for station grounds. But until approved the appropriation stands suspended.

The act of 1875 confers upon the railroad company the "right to take" from the public lands adjacent to its right of way, ground for station purposes. This "right to take" in advance of construction, is subject to the approval of the Secretary of the Interior. When, therefore, the railroad company has exercised its "right to take" a particular tract for station purposes, by filing a survey and plat of the ground selected, the Secretary of the Interior is called upon to interpret the law under which the right to take is claimed, and to determine the lawfulness of the taking, as of the time when the right was asserted by the filing of the plat and survey. When he acts and for the Government consents, by approving the plat, his approval operates to give effect to the grant, the land upon which it operates being thereby definitely determined. Therefore it is that a claim by another initiated pending his

conclusion is cut off, by giving effect to the approval as of the date when his action was invoked. The principle is that which has been many times applied in conflicting claims to indemnity lands, under railroad land grants. In such cases the patent, when issued, is held to relate to the date of the filing of the railroad company's list of selections in lieu of place lands lost, thereby defeating adverse rights initiated after the actual filing of the list of selections. The same rule has likewise been applied to lists of selections made by States to which a grant has been made subject to location. In both classes of cases, it has been many times ruled that while no vested right against the United States is acquired until the actual approval of the list of selections, the company does acquire a right to be preferred over such an intervenor. In other words, the patent, when issued, relates back to the initiatory right, and cuts off all claimants whose rights were initiated later. The question was fully reasoned out and the cases reviewed in *Weyerhaeuser* v. *Hoyt*, 219 U. S. 380, and we can add nothing to the conclusiveness of that case.

But, it is said that the doctrine of relation does not apply to the benefits to be acquired under the fourth section of the act of March 3, 1875, because a railroad desiring a right of way in advance of construction must do three specific things: first, make a definite location of its route; second, file a profile map of its line with the register of the land office for the district; and third, obtain the approval of that map by the Secretary of the Interior; and that the act makes each of these things a prerequisite to the acquirement of any right, by expressly declaring that "thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way."

In *Minneapolis &c. Railroad* v. *Doughty*, 208 U. S. 251, the question was whether a homestead application filed

after the railroad company had surveyed and staked out
its route across the quarter-section claimed, but before
the road had been constructed or its map of location filed,
was entitled to preference over the right later secured by
the approval of a map of alignment, following the route
which had been staked. The claim was that the approval
by the Secretary of the Interior of the map of location
related in date to the date when the route was staked out,
and thus cut out the homestead claim. This court held
that the mere surveying and staking of a route was not
such actual possession and appropriation as to give effect
to the grant and bring the case under the authority of
*Jamestown & N. Railroad* v. *Jones,* 177 U. S. 125.

The distinction and essential difference between a mere
staking out of a route, which, being the act of the com-
pany alone, is changeable at its will, and actual construc-
tion, which necessarily fixes the position of the route and
consummates the purpose for which the grant of a right
of way is given, is very obvious, and was carefully pointed
out in the opinion of the court in the case referred to.

Another point was involved and decided in the *Doughty
Case,* namely, that the approval of the map of alignment
by the Secretary of the Interior would not relate to the
date of the surveying and staking out of the route. This
was manifestly so, since that survey and staking was
subject to change at any time before the permanent line
was located by the filing of a map of such locations for the
approval of the Secretary of the Interior. Therefore it is
that the doctrine of relation has always been applied in
reference to the date when the official action of the De-
partment was invoked to confirm the location thus perma-
nently settled. These points were conclusive against the
railroad company and were the only questions for decision.
The case was therefore rightly decided.

But that case does not control this. Here we are re-
quired to say whether a preëmptor whose claim was

initiated while the Secretary of the Interior had under
consideration the approval of a map of station grounds
thereby obtained a right to be preferred. True, this ap-
proval did not occur until after the rights of the plaintiffs
in error had been initiated; but the patent to the pre-
emptor did not issue until long after that approval. Upon
what principle can it be held that the grant, which, under
any view of the case, is prior in date to the patent under
which plaintiffs in error claim, is subordinate in right as to
the overlap? Neither should the case of *Railroad* v.
*Doughty* be regarded as construing the fourth section of
the act as holding that pending the approval of a map of
final location, any right may be initiated which will be
superior to the title which vests upon such approval. No
such question was involved in that case. What is said in
the opinion about the grant of a right of way being de-
pendent upon the doing of three things—location of road,
filing profile of it in the Land Office, and the approval
thereof by the Secretary of the Interior—and that "*there-
after* all such lands over which such right of way shall pass
shall be disposed of subject to such right of way," refers
to the non-vesting of any right *as against the United States*,
and not as denying the priority of right in the acquisition
of the premises as *between parties* growing out of priority
of application.

Any construction of the fourth section of the act of
1875 which would permit rights initiated while the Secre-
tary of the Interior was considering the approval of a map
of location of a right of way over public lands, or a plat of
survey of depot grounds, to prevail over rights resulting
from the prior commencement of proceedings for the ac-
quisition of title, would be in conflict with the settled
practice of the Land Department and the repeated rulings
of this court under other acts. *Shepley* v. *Cowan*, 91
U. S. 330; *Weyerhaeuser* v. *Hoyt*, 219 U. S. 380.

Any other conclusion would lead to great confusion and

tend to defeat the purpose of the fourth section by inviting intervenors to initiate rights made desirable by the disclosure of the land most available to the railroad company, and rights presumably hurtful to the railroad enterprise, which Congress intended to encourage and promote.

The principle applicable is fully discussed in *Shepley* v. *Cowan*, cited above, where, after discussing certain prior cases, the court said (p. 338):

"But whilst, according to these decisions, no vested right as *against the United States* is acquired until all the prerequisites for the acquisition of the title have been complied with; parties may, as against each other, acquire a right to be preferred in the purchase or other acquisition of the land, when the United States have determined to sell or donate the property. In all such cases, the first in time in the commencement of proceedings for the acquisition of the title, when the same are regularly followed up, is deemed to be the first in right."

The initiatory act, to which the final act of approval relates, is the filing with the Secretary of the Interior of the map of definite location. The mere surveying and staking of a route is the tentative act of the railroad. It might at will select a different route and move its stakes. But when it adopts a route definitely and then causes a map of such route to be filed in the land office of the district, in duplicate, and then filed with the Secretary of the Interior, a right is thereby initiated which, until disposed of, rightly precludes the creation of a later right and gives to the company, as prior in time, priority in right. The foundation for this doctrine of relation is so fully stated and so thoroughly vindicated by the opinion in *Weyerhaeuser* v. *Hoyt*, cited above, that we need say nothing more.

It is next said that the register did not, after a copy of the approved map of station grounds had been transmitted

to him, mark the proper township plat and tract books, as required by the regulations of the Land Department, so as to show the station land selected. This notation on the books of the local land office is for the purpose of giving notice to future enterers. But this was not required to be done until the receipt in the Land Office of the approved plat of station grounds. That approval did not occur until December 15, 1888. Reed filed his right of preëmption October 18, 1888, a date antecedent to any possible notation. He could not, therefore, have been misled but, on the other hand, had the constructive notice which came from the then pending proceedings before the Secretary of the Interior. But aside from this, there are two answers to the contention: First, if we are right in holding that the grant vested in the company when the plat was approved, as of the date when filed, the failure of the officer in the district land office to properly mark the plat could not operate to defeat the grant; and, secondly, the railroad company having done everything which it was required by law to do, should not be affected by the negligence of the register in not doing a duty upon which the vesting of title as against the United States did not depend. If the taking effect of the grant had been made to depend upon his properly marking the plat books, there would be no room for the doctrine of relation to the initiatory step of filing the plat of selection. As that is not the case, his neglect to do something not vital to the vesting of title will not defeat the title so vested.

When the plat of station grounds was approved by the Land Department, the grounds so selected were segregated from the public lands, and it was the duty of the Land Department to withdraw the land so granted from the market. If a subordinate failed to make the proper notation by which this withdrawal would have been recorded, it was not the fault of the railroad company. In *Van*

*Wyck* v. *Knevals,* 106 U. S. 360, 367, this court said of the effect of the approval of a map of definite location:

"No further action is required of the company to establish the route. It then becomes the duty of the Secretary to withdraw the lands granted from market. But if he should neglect this duty, the neglect would not impair the rights of the company, however prejudicial it might prove to others. Its rights are not made dependent upon the issue of the Secretary's order, or upon notice of the withdrawal being given to the local land-officers."

We therefore conclude that the subsequent issue of a patent to the land entered by Reed was subject to the rights of the railroad company theretofore acquired by approval of its station ground map. The patent is not an adjudication concluding the paramount right of the company, but insofar as it included lands validly acquired theretofore, was in violation of law, and inoperative to pass title.

Certain other questions have been touched upon in the briefs. None of them need special notice.

We find no error in the judgment of the Idaho court, and it is, therefore

*Affirmed.*