## TAGGART v. GREAT NORTHERN RY. CO.

### (Circuit Court of Appeals, Ninth Circuit. February 2, 1914.)

### No. 2304.

1. PUBLIC LANDS (§ 92*)—GRANT OF RAILROAD RIGHT OF WAY—DATE OF ACQUISITION OF RIGHTS.

Under Act March 3, 1875, c. 152, § 1, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), granting a right of way through the public lands to any duly organized railroad company which shall file with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization, and section 4 providing that any company desiring the benefits of that act shall within 12 months after the location of any section of 20 miles of its road, or if upon unsurveyed lands within 12 months after the survey by the United States, file with the Register of the Land Office a profile of its road, and that, upon approval thereof by the Secretary of the Interior, it shall be noted upon the plats in his office, and that thereafter all such lands over which such right of way shall pass shall be disposed of subject thereto, where, though the maps showing the definite location of a line of railroad had not been approved when a homestead entry was made, they had been filed and proceedings for final approval were pending, the final approval subsequently made related back to the filing, and the lands acquired under the homestead entry were subject to such right of way.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 276–282; Dec. Dig. § 92.*]

2. PUBLIC LANDS (§ 92*)—GRANT OF RAILROAD RIGHT OF WAY—FILING MAPS —"PROFILE."

Under such sections, the maps filed by a railway company and approved were not insufficient, though they did not show the elevations, depressions, and grades of the line where the regulations of the General Land Office expressly declared that "profile," as used in such act, was understood to intend a map of alignment or definite location.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 276–282; Dec. Dig. § 92.*]

3. PUBLIC LANDS (§ 92*)—GRANT OF RAILROAD RIGHT OF WAY—ABANDONMENT.

Where the successor of a railroad company, whose maps of its right of way across public lands had been filed and approved, revised the survey and location of the road and filed maps of such revision and amended definite location, showing a right of way, the center line of which, in crossing a particular lot, did not vary to exceed 20 feet from that of the old right of way, and was required by the Commissioner of the General Land Office to file a relinquishment under seal of all rights under the original approval of the maps filed by its predecessor, whereupon it filed a relinquishment of all its right to the right of way pertaining to the line of railway shown upon such maps, excepting and excluding, however, all of such right of way as was or might be situated within the limits of the right of way pertaining to the revised and relocated line of railway, after which the new maps were approved, the company did not abandon its rights acquired by the filing of the original maps to so much of the right of way shown thereon as was within the right of way shown on the new maps.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 276–282; Dec. Dig. § 92.*]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Frank H. Rudkin, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit by George M. Taggart against the Great Northern Railway Company. Judgment for defendant (208 Fed. 455), and complainant appeals. Affirmed.

C. J. France and Frank P. Helsell, both of Seattle, Wash., for appellant.

F. V. Brown, of Seattle, Wash., and Charles S. Albert and Thomas Balmer, both of Spokane, Wash., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The question in this case is whether the appellant, who was complainant in the court below, took the title to the tract of land conveyed to him by the patent of the government issued pursuant to his entry thereof under the homestead laws, subject to a right of way over it claimed to have been acquired by the appellee railway company under and by virtue of the provisions of the act of Congress of March 3, 1875 (18 St. at Lg. 482), the first and fourth sections of which provide as follows:

"Section 1. That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side-tracks, turn-outs, and water-stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road."

"Sec. 4. That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

The stipulation upon which the cause was tried shows these, among other, facts: During the year 1906 the Washington & Great Northern Railway Company, a corporation of the state of Washington, and by its laws authorized to locate and construct lines of railroad within the state, surveyed and located a line of railway from Wenatchee northerly along the west bank of the Columbia river to the mouth of the Okanogan river and northerly therefrom to the international boundary line between the United States and the Dominion of Canada. The line of road so surveyed and located crossed lot 4, section 13, township 28 north of range 23 east, W. M., in a northerly and southerly direction. That is the lot over which the present controversy arose, and was at that time vacant and unoccupied public land of the United

States. The line of road so surveyed and located by the Washington & Great Northern Railway Company was duly adopted by resolution of its board of directors as the definite location of its line of railway, and the company, having filed with the Secretary of the Interior of the United States a copy of its articles of incorporation and due proof of its organization under the same, filed, January 2, 1907, in the United States Land Office at Waterville, in the state of Washington, maps showing the definite location of its line of railway as so surveyed and located. The maps so filed were duly approved by the Secretary of the Interior March 23, 1908, and were returned to the local land office at Waterville, where the proper notations were made by its officers upon the plats, showing the located line across the public land of the United States. In July, 1907, the Washington & Great Northern Railway Company conveyed to the Great Northern Railway Company, the appellee herein, all its right, title, and interest in and to the right of way thus located and acquired, which grantee company then became and has ever since been the owner thereof. The Great Northern Railway Company filed with the Secretary of the Interior a copy of its articles of incorporation and due proof of its organization thereunder, and during the years 1908 and 1909 revised the survey and location of the road as theretofore made by its predecessor in interest, and on July 31, 1909, filed, with the Register and Receiver of the United States Land Office at Waterville, maps of such revision and amended definite location. The difference between the central line of the road as shown on the original maps and the central line of the road as shown on the amended maps does not exceed 20 feet at any point where the lines cross lot 4, but at other places the variation is as much as 200 feet. On the 12th of January, 1912, the local land office at Waterville, by direction of the Commissioner of the General Land Office, called the attention of the Great Northern Railway Company to the fact that the amended map of definite location was not accompanied by a relinquishment under seal of all rights under the original approval of the maps filed by the Washington & Great Northern Railway Company, as to the portions thereof amended by the map filed by the Great Northern Railway Company, as required by section 19 of the Circular of the General Land Office issued May 21, 1909, which reads as follows:

"When the railroad is constructed, an affidavit of the engineer and certificate of the president must be filed in the local office, in duplicate, for transmission to the General Land Office. No new map will be required except in case of deviations from the right of way previously approved, whether before or after construction, when there must be filed new maps and field notes in full, as herein provided, bearing proper forms, changed to agree with the facts in the case. The map must show clearly the portions amended, or bear a statement describing them, and the location must be described in the forms as the amended survey and amended definite location. In such cases the company must file a relinquishment, under seal, of all rights under the former approval as to the portions amended, said relinquishment to take effect when the map of amended definite location is approved by the Secretary of the Interior."

February 6, 1912, the Great Northern Railway Company released and relinquished to the United States all its right, title, and interest in and to the right of way pertaining to the line of railway as shown upon

the maps filed by its predecessor and approved by the Secretary of the Interior, "excepting and excluding, however, any and all of such right of way that is or may be situated within the limits of the right of way pertaining to the revised and relocated line of said company's railway shown upon the maps thereof filed in the United States District Land Office at Waterville, Wash., on the 31st day of July, 1909."

The relinquishment expressly provided that it should not take effect until the revised and amended map of definite location was approved by the Secretary of the Interior. The amended map thus filed was formally approved by the Secretary of the Interior July 13, 1912. Neither the Great Northern Railway nor its predecessor in interest filed a profile showing the elevations and grades of the proposed roads across the public lands of the United States, and was never requested so to do until November 17, 1910, on which day the register and receiver of the land office at Waterville, by direction of the Secretary of the Interior, notified the appellee that since the line of its railway, as described in the map of amended definite location, crossed certain lands suitable for power sites, which had been temporarily withdrawn from entry and sale, the company would be required to file a profile showing the elevations and depressions at which the line of railway crossed such lands, and pursuant to that request the company did, on the 4th day of May, 1911, file a profile in the land office at Waterville, showing the elevations and depressions of its entire line, from the crossing of the Okanogan river to the junction with the main line near Wenatchee. At all times since November 4, 1898, the regulations promulgated by the General Land Office and approved by the Secretary of the Interior, under the act of Congress of March 3, 1875, contained, among other things, the following:

"The word 'profile' as used in this act is understood to intend a map of alignment. All such maps and plats of station houses are required by the act to be filed with the register of the land office for the district where the land is located. If located in more than one district, duplicate maps and field notes need be filed in but one district, and single sets in the others. The maps must be drawn on tracing linen, in duplicate, and must be strictly conformable to the field notes of the survey of the line of route or of station grounds."

It further appears from the agreed statement of facts:

"That the only land in said lot 4 which said defendant proposes to occupy in the construction, maintenance, or operation of its railroad across said lot 4 is a strip of land about 180 feet in width, being all that part of a strip of land 100 feet wide on each side of the center line shown in the map of definite location filed January 2, 1907, located and remaining within the lines of a strip 100 feet wide on each side of the center line shown on the map of amended definite location filed July 31, 1909. That said defendant will, unless restrained by the order of this court, proceed to enter upon said strip, and to construct, maintain, and operate its line of railway thereon."

It thus appears that the land patented to the appellant pursuant to his homestead entry thereof was vacant and unoccupied public land at the time of the definite location of the railroad in question by the appellee's predecessor in interest, and at the time, to wit, January 2, 1907, it filed in the land office of the district in which the land is situated its maps showing such definite location, that company having

previously filed with the Secretary of the Interior a copy of its articles of incorporation and due proof of its organization thereunder as required by the right of way act, which maps of definite location were on the 23d day of March, 1908, duly approved by the Secretary of the Interior and by him returned to the local land office, upon the receipt of which the register and receiver noted upon the plats in that office, "The said located line of railway of said Washington & Great Northern Railway Company."

[1] Although the maps showing the definite location of that line had not been finally approved at the time the homestead entry was made upon which the appellant's patent is based, those maps had been previously filed in the local land office, proceedings for the final approval of which were pending in the Land Department at the time of the homestead entry, which final approval, made March 23, 1908, related back to the filing of the maps in the land office, which latter date was prior to the initiation of the appellant's rights, thereby subjecting the land acquired by him to the right of way conferred on the appellee's predecessor in interest by the act of Congress of March 3, 1875. Stalker v. Oregon Short Line, 225 U. S. 142, 32 Sup. Ct. 636, 56 L. Ed. 1027.

[2] The objection urged on behalf of the appellant that the maps so filed by the railway company and so approved were not the "profile" maps required by the act of March 3, 1875, in that they did not show the elevations, depressions, and grades of the line, is, we think, untenable. As has been seen, in and by the regulations promulgated by the General Land Office, it is expressly declared that the word "profile," as used in the act of March 3, 1875, "is understood to intend a map of alignment," or definite location, and such seems always to have been the construction of the Land Department. Circular of January 13, 1888, 12 Land Dec. Dept. Int. 423; Circular of November 4, 1898, 27 Land Dec. Dept. Int. 663.

In the case of Stalker v. Oregon Short Line, supra, the question was whether a pre-emptor, whose claim was initiated while the Secretary of the Interior had under consideration the approval of a map for station grounds claimed by the railroad company under the act of March 3, 1875, thereby obtained a right to be preferred. In holding against the pre-emptor the court, in the course of its opinion, said, among other things:

"Prior to the initiation of any right here involved, the Land Department put in force certain regulations to be followed by railroad companies desiring to secure the benefits of a grant in advance of actual construction, as provided by the fourth section of the act. One of these required that upon the location of any section, not exceeding twenty miles in length, the company should file with the register of the land district in which the land lay 'a map for the approval of the Secretary of the Interior, showing the termini of such portion and its route over the public lands,' etc. Another of these departmental regulations provided that 'if the company desires to avail itself of the provisions of the law which grants the use of ground adjacent to the right of way for station buildings * * * it must file for approval, in each separate instance, a plat showing, in connection with the public surveys, the surveyed limits and area of the grounds desired.' These regulations require that 'a copy' of the approved map of 'definite location,' and of the

'approved plat of grounds selected by a company, under the act in question, for station purposes,' shall be transmitted to the register of the land office where the land lies. Upon the receipt of the map of alignment, the land office is required 'to mark upon the township plats the line of the route of the road as laid down on the map,' and to note in pencil on the tract books, opposite the tract of public land cut by said lines of railroad, 'that the same is disposed of subject to the right of way,' etc., and to write upon the face of any certificate disposing of said lands, after the filing of such approved map of location, 'that it is allowed subject to the right of way.' A like duty is put upon the register when an approved station ground plat is received.

"The plat of the station grounds selected by the railroad company in this case was filed in the local land office on September 12, 1888, and reached the Secretary of the Interior on September 20, 1888. Both dates are antecedent to the filing of the pre-emption claim. But the selection pended in the office of the Secretary of the Interior until December 15, 1888, on which date it was approved. While thus pending, the pre-emption right of Reed was initiated.

"There can be no doubt that the provisions of the fourth section, for securing in advance of construction the benefits of the act, have application to the station grounds, as well as to the right of way proper. The 'benefits' to be secured cover one as well as the other. The prerequisites for securing either right, in advance, is the filing of a map of location, whether it be for a right of way or for station grounds. But until approved the appropriation stands suspended. * * *

"But it is said that the doctrine of relation does not apply to the benefits to be acquired under the fourth section of the act of March 3, 1875, because a railroad desiring a right of way in advance of construction must do three specific things: First, make a definite location of its route; second, file a profile map of its line with the register of the land office for the district; and, third, obtain the approval of that map by the Secretary of the Interior—and that the act makes each of these things a prerequisite to the acquirement of any right, by expressly declaring that 'thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way.' "

And, after referring to two of its former decisions, the court further said:

"Any construction of the fourth section of the act of 1875 which would permit rights initiated while the Secretary of the Interior was considering the approval of a map of location of a right of way over public lands, or a plat of survey of depot grounds, to prevail over rights resulting from the prior commencement of proceedings for the acquisition of title, would be in conflict with the settled practice of the Land Department and the repeated rulings of this court under other acts. Shepley v. Cowan, 91 U. S. 330 [23 L. Ed. 424]; Weyerhaeuser v. Hoyt, 219 U. S. 380 [31 Sup. Ct. 300, 55 L. Ed. 258]."

[3] In the present case the further point is made that, if the appellee did acquire a right of way over the land in question by the map of definite location filed by its predecessor in interest, it abandoned such right by the filing of the map of amended definite location.

In view of the admitted facts, we see no merit in the contention. The relinquishment to the United States made by the appellee pursuant to the requirement of the Land Department by reason of the amendment was of all of its interest in and to the right of way pertaining to the line of railway as shown by the maps filed by its predecessor and approved by the Secretary of the Interior, "excepting and excluding, however, any and all of such right of way pertaining to the revised and relocated line of said company's railway shown upon the maps thereof filed in the United States District Land Office at Waterville, Wash., on the 31st day of July, 1909."

The agreed statement of facts shows:

"That the center line shown on said map of definite location, filed by the Washington & Great Northern Railway Company, is located easterly of the center line shown on said map of amended definite location filed by said Great Northern Railway Company across said lot 4. The maximum distance between said center lines is 13.2 feet, according to measurements from the northeast corner of lot 1, section 13, township 28 north, range 23 east, W. M., and 23.7 feet according to measurements from the southwest corner of said section 13, said points being the nearest, northerly and southerly, respectively, from said lot 4, to which said center lines are tied on said maps."

And:

"That the only land in said lot 4 which said defendant proposes to occupy in the construction, maintenance, or operation of its railroad across said lot 4 is a strip of land about 180 feet in width, being all that part of a strip of land 100 feet wide on each side of the center line shown in the map of definite location filed January 2, 1907, located and remaining within the lines of a strip 100 feet wide on each side of the center line shown on the map of definite location filed July 31, 1909. That said defendant will, unless restrained by the order of this court, proceed to enter upon said strip and to construct, maintain, and operate its line of railway thereon."

It thus appears that the only portion of appellant's land over which the railway company claims a right of way is within the original right of way and was expressly excepted from the relinquishment.

The judgment is affirmed.