GREAT NORTHERN RAILWAY COMPANY, a corporation,
Appellant, v. VIVIAN H. STEINKE, PAUL E. STEINKE,
SPRING BROOK STATE BANK, a corporation,
HENRY GRAICHEN, CHRISTIE GRAICHEN, EMMA L.
SCHARTLE, VERLIE SCHARTLE, EVERETT A. WEBSTER,
MARTHA WEBSTER, WALTER T. WEBSTER, ADDIE M.
WEBSTER, ELI KINGSTON, EDNA KINGSTON, ELIZA-
BETH COMFORD, SPRING BROOK TRADING COMPANY,
a corporation, J. L. KINGSTON, DANIEL JACOBSON, FRANK
M. CRAIG, NANCY CRAIG, CHARLIE F. BELLET, ALICE
BELLET, ALVA ULRICH, and HATTIE ULRICH, Defendants,
and VIVIAN H. STEINKE, PAUL E. STEINKE, SPRING
BROOK STATE BANK, a corporation, HENRY GRAICHEN,
CHRISTIE GRAICHEN, EMMA L. SCHARTLE, VERLIE L.
SCHARTLE, EVERETT A. WEBSTER, MARTHA WEB-
STER, WALTER T. WEBSTER, ADDIE M. WEBSTER,
ELI KINGSTON, EDNA KINGSTON, SPRING BROOK
TRADING COMPANY, a corporation, DANIEL JACOBSON and
FRANK M. CRAIG, Respondents.

(183 N. W. 1013.)

**Public lands — railroad held not to have complied with statute so as to acquire
title as against holder of patent.**

The plaintiff railway company brought action to determine adverse
claims to a strip of land which it claims to have selected and appropriated
as station grounds under the provisions of Act Cong. March 3, 1875, c. 152,
18 Stat. 482 (U. S. Comp. St. §§ 4921-4926.) The defendants occupied
and claimed title to certain portions of said strip under and by virtue of
deeds received through one Pollock, who had obtained a patent from the
United States, which, among other lands, purported to convey to said
Pollock the whole strip claimed by the railway company in this action.
It is *held* that the defendants are the owners of the respective parcels
to which they assert title.

Opinion filed May 28, 1921.

From a judgment of the District Court of Williams County, *Fisk*, J. plaintiff appeals.

Affirmed.

*Murphy* & *Toner*, for appellant.

The Welo entry was a necessary part of plaintiff's chain of title and should have been pleaded, and not having been pleaded, evidence of it was and is inadmissible. Shuttuck v. Smith, 6 N. D. 56, see p. 75; Pease v. Sanderson, 188 Ill. 597, 59 N. E. 425; LaBaron v. Shepherd, 21 Mich. 263; Strong v. Whybank, 204 Mo. 341, 102 S. W. 968; 12 L. R. A. (NS) 240; Sturtevant v. McDougall, 45 Wash. 532, 88 Pac. 1035; Cargar v. Fee, 140 Ind. 572, 39 N. E. 93; Pittsburg R. R. Co. v. O'Brien, 142 Ind. 218, 41 N. E. 528; Stuart v. Lowery, 49 Minn. 91, 51 N. W. 662.

In Ry. Co. v. O'Brien, supra, it is held that where the source of a party's title is specifically set out, no other source can be proven.

Decisions of the land department on questions of fact are not reviewable by the courts, and the land department having the facts before it approved the grant. Noble v. Ry. Co. 147 U. S. 165; Ry. Co. v. Stringham, 110 Pac. 868; Ry. Co. v. Ry. Co. 84 Pac. 1097; Comford v. G. N., 18 N. D. 570.

Whether the right of way granted to lay ties and steel on, build grades on, a side turnout, or a water tank, it is granted for right of way, and the title, the right of disposition, and the right of private persons to acquire title thereto is the same as to any and all lands granted under the act, after actual acquisition. Ry. Co. v. People 98 Ill. 350; Ry. Co. v. Ry. Co. 152 Fed. 849; Pfaff v. Ry. Co. 108 Ind. 144, 9 N. E. 93; Carmody v. Ry. Co. 111 Ill. 69.

The doctrine that the person most at fault should suffer in a contest over title has no application to a contest over a title acquired by grant as in this case. Stalker v. Ry. Co. 225 U. S. 142; Moran v. Ry. Co. 120 N. W. 192.

The grant here is not subject to the rules and construction of private grants. United States v. Van Horn, 197 Fed. 611.

The grant evidenced by an approved map and plat under the Act of

1875 has the effect of, and is as good as a patent. Ry. Co. v. Ry. Co. 172 Fed. 738.

Grants under the Act of 1875 are not subject to collateral attack such as is being made in this case. Noble v. Ry. Co. 147 U. S. 165.

The railroad may change the location of a part of its grant under this Act, even though a different route in part had already been claimed and granted. Taggart v. G. N. Ry. Co. 211 Fed. 288; Ry. Co. v. Ry. Co. 84 Pac. 1097; Practice In Filing Maps, Moran v. Ry. Co. 120 N. W. 192; Stalker v. Ry. Co. 225 U. S. 192; Ry. Co. v. Stalker, 94 Pac. 56.

*Craven* & *Converse* and *Wm. G. Owens,* for respondents.

"There is no power in the officers of the Government to extend the grant, after the legal terminus of the road has been reached at the Pacific Ocean, the acceptance of the maps of definite location extending the road on along the ocean to San Francisco without power and void." Atlantic & Pacific Ry. Co. 4 L. D. 458, 460; C. S. P. M. & O. Ry. v. Omaha Ry. Co. 6 L. D. 195, 205.

At page 205 Department says:

"When the line of a land grant railroad has once been definitely fixed by the filing and acceptance of its map, *there is no authority to change that location except the legislative;* and in the absence of a legislative sanction the action of the land authorities in *allowing* or *recognizing such change* can neither confer or take away rights." N. P. R. R. Co. 21 L. D. 412.

"The right of said Co. to fix the terminus of its road, subject to approval of the Department, if once exercised is thereby exhausted and the Company thereafter has no authority to establish another place as the initial point of its road."

No act of the executive (The Department or President) thereafter in approval of another terminal point could confer any right in such matter.

At p. 420 the Secretary says: "The rule seems to be without exception that where authority to locate is made, the power is exhausted and the company cannot thereafter change that location (citing authorities)—It would therefore appear that the N. P. R. Co. have made its connection with Lake Superior at Duluth, whether accompanied by a formal declaration to that effect, or not, could not properly change that terminus for another.

"The lands covered by a H. E. are not 'public lands.' * * * The

words 'public lands' are habitually used in our legislation to describe such lands as are subject to sale and disposal under the general laws. The grant would not take land otherwise appropriated by H. E. existing at the date of the grant, although subsequently cancelled." Prest. v. N. P. Ry. Co. 2 L. D. 506.

Ry. Co. v. Jones 29 L. D. 550 holds when an entry on filing is confirmed as against a withdrawal or definite location, the land covered thereby is excepted from the operation of the grant. N. P. R. R. Co. v. Mead, 16 L. D. 488; Darcy v. N. P. R. R. Co. 17 L. D. 265; H. & D. Ry. Co. v. Martin, 19 L. D. 20; U. P. Ry. Co. v. Wade, 27 L. D. 46; U. P. Ry. Co. v. Cunningham, 28 L. D. 94; U. P. Ry. Co. v. Landrum, 28 L. D. 575.

"The right-of-way through the lands of the U. S. is hereby granted to any Railroad Co. * * * which shall have filed with the Secretary of the Interior, a copy of its Articles * * * and due proofs of its organization * * * to the extent of 100 feet on each side of the center line of the road; * * * also ground adjacent to such right-of-way for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed in amount 20 acres for each station, to the extent of one station for each ten miles of its road." U. S. Comp. St. 1918, § 4923 (§ 3 of Act).

Provides for condemnation of "possessory claims on such public lands." U. S. Comp. St. 1918, § 4924 (§ 4 of Act); U. S. Comp. St. 1918, § 4925 (§ 5 of Act).

"This act shall not apply to any lands * * * especially reserved from sale," * * * U. S. Comp. St. 1918, § 4926 (§ 6 of Act).

"Congress reserves the right * * * to alter, amend or repeal this Act" * * *

Act of April 21, 1876, reads, so far as material, as follows: "All preemption and homestead entries, or entries in compliance with any law of the U. S., of public land, made in good faith by actual settlers, * * * within the limits of any land grant prior to the time when notice of the withdrawal of the lands embraced in such grant was received at the local Land Office.

CHRISTIANSON, J. This is an action to determine adverse claims to a certain strip of land adjoining the right of way of the plaintiff railway company in the town of East Spring Brook in Williams county in this state. The plaintiff railway company, as successor in title to the St.

Paul, Minneapolis & Manitoba Railway Company, claims that the property in question is a part of the station grounds granted to its predecessor under the act of Congress of March 3, 1875 (18 Stat. at L. 482, chap. 152; U. S. Comp. St. §§ 4921-4926). And it is averred in the complaint that the several defendants are owners of certain lots in East Spring Brook, which lots "as platted encroach upon" a part of the strip of land to which plaintiff seeks to have title quieted in itself. The strip of land described in the complaint is located wholly within the N. W. ¼ of the N. E. ¼ of section 18, township 155, range 99. The defendants answered, denying the allegations of the complaint, and alleging a fee-simple title to the several lots through patent issued by the United States to one Philander Pollock, under whom they claim title. They further averred that they had been possessed of the premises under color of title, and had paid taxes thereon for a period of more than 10 years, and hence had become vested with title by virtue of § 5471, C. L. 1913; also that the plaintiff railway company has been guilty of such laches as to bar its right to maintain this action. The judgment in the trial court was in favor of the defendants, and the plaintiff has appealed and demanded a trial anew in this court. The conflicting claims arose as follows: The St. Paul, Minneapolis & Manitoba Railway Company was duly qualified under the act of Congress of March 3, 1875, to acquire a right of way and station grounds. In 1887 or prior thereto said railway company located and commenced the construction of a line of railway over the lands in controversy here, completing such construction in May, 1887. At that time the lands were unsurveyed. The Secretary of the Interior had approved the application of the railway company for the construction of such line of railway across the public domain, but a plat giving the definite location thereof was not filed in the local land office at Minot, N. D., until September 3, 1898. In the meantime the lands had been surveyed, and on the last-mentioned date said railway company filed in said local land office a plat, showing the railway as constructed, and an additional 20-acre tract, adjoining the right of way, located in sections 4 and 5, township 155 north, of range 99 west, said tract being designated on said plat as "Spring Brook." Said plat was thereafter presented to the then Secretary of the Interior, and by him approved on July 10, 1899. For some years after the railroad was constructed and put into operation it maintained the station of Spring Brook at the place so designated in §§ 4 and 5. At a later time (the exact time does not

definitely appear in the evidence)—the location of said station was changed to its present location in the N. W. ¼ of the N. E. ¼ of section 18 of said township and range; that is to say, to a point on the line of railway adjacent to the strip of land involved in this controversy. On April 24, 1900, one John Welo duly made a homestead entry, covering, among others, the said N. W. ¼ of the N. E. ¼ of section 18, township 155, R. 99, which homestead entry remained in effect until May 13, 1901. when it was relinquished by the entryman. On January 12, 1900, the said railway company filed in the local land office at Minot, N. D., its application for and the plat of an additional 20-acre tract in the N. E. ¼ of N. E. ¼, N. W. ¼ of N. E. ¼, N. E. ¼ of N. W. ¼, S. E. ¼ of N. W. ¼, and N. E. ¼ of S. W. ¼ of section 18, township 155 north, range 99 west, which tract includes the lots or parcels of land in controversy here. But it seems that the railway company later withdrew the application and plat, for it bears this indorsement:

"U. S. Land Office, Minot, N. D. Received and refiled July 18, 1900, at 9 a. m. The land embraced in this section is all vacant except E. ½ of N. W. ¼ and W. ½ of N. E. ¼, section 18, Twp. 155, Rg. 99.

"Thomas E. Olsgard, Register.

"Abner L. Hanscom, Receiver."

On October 18, 1900, the then Secretary of the Interior made and signed the following indorsement thereon:—

"Approved subject to all valid existing rights."

No evidence was offered explanatory of the withdrawal of the plat and application by the railway company. Nor is there any showing that the plat was approved, was at any time filed with the local land office, or that any notation thereof or of the lands claimed therein was ever made upon the records of the local land office. On August 19, 1902, one Philander Pollock filed homestead entry upon a quarter-section of land, including the said N. W. ¼, N. E. ¼, section 18, within which the lands in controversy here are located. On June 1, 1903, said Pollock relinquished his entry as to said 40-acre tract, and at the same time located scrip on said tract. The scrip was allowed, and on October 31, 1905, a receiver's receipt for said 40-acre tract was duly issued by the officers of the local land office at Minot, N. D., and shortly thereafter recorded in the office of the register of deeds of said Williams county. On February 28, 1906, the United States issued to said Pollock a patent for said 40-acre tract, which said patent was shortly thereafter recorded

in the office of the register of deeds of said Williams county. No notation was made on the receiver's receipt, or reservation or exception made in the patent as to the alleged claim of the plaintiff. Both the receiver's receipt and patent were in the ordinary form, and contained nothing to indicate that either the plaintiff or any one else had or claimed any portion thereof. Nothing was recorded in the office of the register of deeds tending to show that plaintiff claimed any portion of the premises for station grounds. Thereafter the defendants, in good faith and without any notice of the alleged claim of the plaintiff, purchased the respective lots now claimed by them, and paid to their respective grantors full value for the tracts conveyed. Each of them received conveyances fair on their face from the then record owners of the title purported to be conveyed by the United States to Pollock by virtue of said patent. Since acquiring such titles the respective defendants or their grantors have been in open and exclusive possession of the respective lots claimed by them, and have caused the same to be improved and valuable structures to be constructed thereon. No claim was asserted by the plaintiff until in May, 1917.

The provisions of the act of Congress of March 3, 1875, which are pertinent to the questions presented in this case are:

"Section 1. The right of way through the public lands of the United States is hereby granted to any railway company duly organized under the laws of any state or territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of 100 feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts, and water stations not to exceed in amount 20 acres for each station, to the extent of one station for each ten miles of its road. * * * "

"Section 4. Any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of 20 miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district

where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such a right of way shall pass shall be disposed of subject to such right of way; provided, that if any section of said road shall not be completed within five years after the location of said section, the .rights herein granted shall be forfeited as to any such uncompleted section of said road." U. S. Comp. St. §§ 4921, 4924.

Prior to the initiation of any right here involved, the Land Department put in force certain regulations to be followed by railroad companies desiring to secure the benefits of a grant in advance of actual construction, as provided by the fourth section of the act. One of these required that upon the location of any section, not exceeding 20 miles in length, the company should file with the register of the land district in which the land lay "a map for the approval of the Secretary of the Interior, showing the termini of such portion and its route over the public lands," etc. Another of these departmental regulations provided that—

"If the company desires to avail itself of the provisions of the law which grants the use of ground adjacent to the right of way for station buildings * * * it must file for approval, in each separate instance, a plat showing, in connection with the public surveys, the surveyed limits and area of the ground desired."

These regulations require that "a copy" of the approved map of "definite location," and of the "approved plat of .ground selected by a company, under the act in question, for station purposes," shall be transmitted to the register of the land office where the land lies. Upon the receipt of the map of alignment, the land office is required "to mark upon the township plats the line of the route of the road as laid down on the map," and to note in pencil on the tract books opposite the tract of public land cut by said lines of railroad "that the same is disposed of subject to the right of way," etc., and to write upon the face of any certificate disposing of said lands, after the filing of such approved map of location, "that it is allowed subject to the right of way." A like duty is put upon the register when an approved station ground plat is received. Stalker v. Oregon S. L. R. Co., 225 U. S. 142, 147, 32 Sup. Ct. 636, 56 L. Ed. 1027, 1030.

Did the railway company acquire title to the tracts in controversy under the above-quoted statutory provisions and the rules and regulations

of the land department incident thereto? The trial court answered this question in the negative, and we are constrained to agree with this view. Whatever title the plaintiff has rests upon the filing and approval of the plat. For, clearly there was no such act on the part of the railway company in dealing with or utilizing the premises as would constitute an appropriation by the railway company of any of the parcels in controversy here for station grounds, assuming that station grounds may be secured by the actual use thereof by the railway company for such purpose. Stalker v. Oregon S. L. R. Co., 225 U. S. 142, 147, 32 Sup. Ct. 636, 56 L. Ed. 1027. It will be noted that the plat was not filed within 12 months after the location and construction of the railroad, nor was it filed within 12 months after the lands had been surveyed by the United States. Whether land may be selected under the provisions of the act after the lapse of such time we find it unnecessary to decide. For, assuming that lands may be selected after the period of time fixed in the statute has expired, we do not believe that title was vested in the railroad company to the tracts in question here. The railway company acquired no rights except such as the Secretary of the Interior by his approval purported to grant. Stalker v. Oregon S. L. R. Co., supra. And it will be noted that when the plat was presented to the officers of the local land office on July 18, 1900, they made an indorsement thereon, specifically showing that the 40-acre tract, the title to which lies at the foundation of this lawsuit, was not vacant. In other words, the indorsement of the officers of the local land office was in legal effect that such tract was no longer a part of the public domain. 32 Cyc. 948. This indorsement was on the plat presented to the Secretary of the Interior. He was specifically informed that the tract in controversy here was not subject to disposal by him under the provisions of the act, and the language in which his approval is couched shows that he was fully aware that he could not grant the application of the railway company as made, and he did not purport to do so. It is our judgment, therefore, that the Secretary of the Interior intended to and did approve the application only in so far as the lands claimed by the railroad company were (according to the information then before the Secretary of the Interior) subject to disposal by him under the provisions of the act, and that he had no intention to and did not approve of the application for station grounds on the tracts of land which the indorsement of the officers of the local land office said were not

vacant. Hence the patent issued to Pollock vested a good title in him and those claiming under him.

In our opinion there is also another reason why the plaintiff cannot prevail in this case. Not only was the land in controversy covered by a valid and existing homestead entry at the time the application of the railway company was finally presented to and filed in the local land office, as well as at the time it was approved by the Secretary of the Interior, but subsequently the Land Department accepted scrip tendered by Philander Pollock, and after the scrip had been approved by the Commissioner of the General Land Office a receiver's receipt was issued and duly recorded, which contained no notice whatever of the fact that any portion of the land was claimed by the railroad company for station grounds. Subsequently patent was issued, purporting to convey to said Pollock the entire 40-acre tract. There is no room for doubt, under the evidence in this case, but that Pollock accepted the title which he received from the government in the best of faith, believing that the entire tract had been conveyed to him subject only to the right of way proper of the railroad company, and that he had not the slightest idea that the railway company claimed any additional portion as station grounds. The undisputed evidence shows that the defendants in this case purchased the premises in good faith, relying upon the title conveyed by the United States government to said Pollock; that in reliance upon such title they paid the grantor full value and caused valuable improvements to be placed on the premises. All this without any assertion or claim of title by the railway company. In these circumstances we believe that the defendants became and are entitled to protection as bona fide purchasers. The doctrine that bona fide purchasers will be protected even in the absence of statute has frequently been recognized by the United States Supreme ·Court. In construing the adjustment act, the Supreme Court of the United States said:

"There was no need of any legislation to protect a 'bona fide purchaser.' This had been settled by repeated decisions of this court. United States v. Burlington, R. Co., 98 U. .S. 334, 342, 25 L. Ed. 198; Colorado Coal Co. v. United States, 123 U. S. 307, 313, 31 L. Ed. 182, reaffirmed in United States v. Cal., Land Co., 148 U. S. 31, 41, 37 L. Ed. 354. For in each of those cases it was decided that, although a patent was fraudulently and wrongfully obtained from the government, if the land conveyed was within the jurisdiction of the Land Depart-

ment, the title of a bona fide purchaser from the patentee could not be disturbed by the government." United States v. Winona R. Co., 165 U. S. 463, 478, 479, 17 Sup. Ct. 368, 372, 41 L. Ed. 789, 796.

It follows from what has been said that the judgment appealed from must be affirmed. It is so ordered.

ROBINSON, C. J., and BRONSON, and BIRDZELL, JJ., concur.

GRACE, J., concurs in the result.