**SPEARS et al. v. SCHAFF, Receiver.**

No. 13577—Opinion Filed Sept. 23, 1924.

**1. Public Lands—Eminent Domain—Railroad's Right of Way—Priority over Rights of Subsequent Entryman.**

Where, as in this case, both the plaintiff and defendants trace their source of title to the real estate in controversy back to the government, the plaintiff by condemnation

proceedings authorized by act of Congress, and the defendants by original entry and government patent, the prior acquired title must prevail in the absence of lack of sufficiency of description or a falure to comply with recordation regulations; and no question of fact is presented for determination by a jury; and a direction given to the jury to return a verdict for possession in favor of the prior claimant does not constitute error.

**2. Same—Right of Railroad to Maintain Ejectment Action.**

Where the plaintiff railroad company acquired title to certain government real estate as right of way for its railroad, by condemnation proceedings authorized by law, and a subsequent entryman takes possession of a portion thereof, the railroad company is not required to bring an equitable action to cancel the subsequent entry and successfully prosecute the same to judgment before it can maintain ejectment against the subsequent entryman for possession of such right of way or portion thereof.

**3. New Trial—Evidence Not Newly Discovered—Denial of Motion.**

Certain correspondence in the office of the Superintendent of the Five Civilized Tribes of Indians, which is as easily available before a trial of the cause and judgment as immediately afterwards, does not constitute such newly discovered evidence as will require the trial court to grant a new trial, when it is not apparent that such correspondence would induce or require the trial court to enter a different judgment to that originally entered.

**4. Appeal and Error—Excessive Damages—Remittitur.**

Where, upon the question of damages for detention of real property, by way of reasonable rentals thereof, the plaintiff claims the sum of $300 for such damages, and the court directs a verdict for the sum of $560, and permits the jury to return a verdict in the sum of $650, on which judgment is rendered in favor of plaintiff, and it is apparent from the record that plaintiff is entitled to nominal damages only, the judgment is so excessive as to require that it be set aside and a new trial granted unless the excessive portion thereof be remitted by plaintiff.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by Charles E. Schaff, as receiver of the properties of the Missouri, Kansas & Texas Railway Company, a corporation, against J. T. Spears and Lee Smallwood, for possession of real estate and for damages. Judgment for plaintiff, and defendants appeal. Remittitur ordered. If order not complied with, cause stands reversed.

Counts & Counts, for plaintiffs in error.

M. D. Green and H. L. Smith, for defendant in error.

Opinion by SHACKELFORD, C. The plaintiffs in error were defendants below, and the defendant in error was plaintiff below, and for convenience the parties will be designated herein as they appeared in the trial court.

The plaintiff, Charles E. Schaff, as receiver of the properties of the Missouri, Kansas & Texas Railway Company, a corporation, brought this action in the district court of Pittsburg county, against the defendants J. T. Spears and Lee Smallwood to recover possession of a small tract of ground approximately 100 feet square, lying within the right of way of railroad being operated through Pittsburg county, Okla., by the plaintiff, the land being located at or near the station house at Adamson, on the plaintiff's railroad track.

The petition alleges that plaintiff is the receiver for said company, and duly authorized to prosecute the proceeding, and that the company acquired ownership of the tract of land by condemnation proceedings brought under Act of Congress of February 28, 1902, entitled, "An Act to grant the right of way through the Oklahoma Territory and the Indian Territory to the Enid and Anadarko Railway Company, and for other purposes," and that the condemnation proceeding was brought in the United States Circuit Court for the Eastern District of the state of Oklahoma in a case wherein the court number was 1503, in which proceeding a final judgment was enacted on July 13, 1911 (copies of the entire proceedings are attached to the petition and made a part thereof), and is entitled to the immediate possession of the land; that the defendants are in possession and have been in possession of the land for more than a year; and have kept plaintiff out of possession; and that the fair and reasonable rental value of the piece of land is $25 per month, and prays for possession and for the sum of $300 for damages for the unlawful detention.

After demurrer filed and overruled, the defendants filed answer and cross-petition. By way of answer they made general denial of all the allegations of the petition. For cross-petition they alleged that they are the owners and in possession of the land, described as lot 2 in block "A", and lot 1 in block 9 in the town of Adamson, Pittsburg county, Okla., and deraign their title through Tom Comisky by deed dated June 7, 1919, who, in

turn, received a patent from the government to lot 1 in block 9 on the town site of Adamson on the 18th day of June, 1914, and patent to lot 2 in block "A" on the 21st day of June, 1916, and attached copies of the instruments; that plaintiff is claiming some right or interest in the lands so described; but in fact has no right, title, or interest in the said land; and denied the unlawful detention. They disclaimed any interest in any other portion of the land described in plaintiff's petition, and seek to quiet their title to said lands as against the plaintiff and the railway company. The answer of the plaintiff to the cross-petition of the defendants is a general denial.

The cause was tried to a jury on the 12th day of May, 1921. At the close of the evidence the court gave the jury a direction to return a verdict for plaintiff for the possession of the land, and for the sum of $560 as damages for the unlawful detention thereof. The jury returned a verdict for possession of the property, and for the sum of $650, for the plaintiff's damages, and judgment was entered in accordance with the verdict. The defendants prosecute appeal and assign many errors occurring in the trial court. But, the view we take of the record, it will not be necessary to discuss all the assignments of error. The whole matter may be reduced to two questions. (1) Is the evidence so conclusive upon the question of ownership and right to the possession of the land as to justify and support the directed verdict for plaintiff as to the possession? (2) Is the evidence so conclusive upon the question of damages for unlawful detention of the property as to justify and support the direction to the jury to return a verdict for plaintiff in the sum of $560, and to support the verdict returned for $650, on which judgment was entered?

1. It seems to be agreed that the land described in the defendants' cross-petition is the land in controversy. The description given in the petition of plaintiff is by metes and bounds, and perhaps includes some land not within the description given in the defendants' cross-petition. The defendants disclaim as to all land not included in their description, if any.

The evidence offered upon the part of the plaintiff tends to show that the land in controversy lies within the right of way of the Missouri, Kansas & Texas Railway, and that title thereto was acquired by the railway company by condemnation proceedings in which a final judgment was rendered on the 13th of July, 1911. The condemnation proceedings were had under the Act of Congress of February 28, 1902, and pursuant to the act the preliminary map of the survey was filed with the Department of the Interior at Washington on the 3rd of October, 1910, as is shown by the indorsement thereon, "Department of the Interior, Office of Indian Affairs. Filed October 3, 1910. Act of February 28, 1902." There is no question raised as to the regularity of the condemnation proceedings and the judgment was unappealed from and became final. The evidence offered upon the part of the defendants tended to show that they acquired title to the property through Tom Comisky, who got patents from the government, one issued on the 18th of June, 1914, for part of the land, and another issued on the 21st of June, 1916, for the remaining portion. Thus it appears that both plaintiff and defendants traced their titles back to the government. There seems to be no question but that the plaintiff has the prior claim to the title. There seems to be no explanation in the record presented here why this land should have been left upon the records in the office of the Secretary of the Interior open for entry. However it may have been, or whatever may be the reason, it seems that the railway company had done all it was required to do under the Act of Congress and in the condemnation proceedings, to acquire title. If the matter of leaving this land open for entry in the records of the Secretary of the Interior was an oversight of some of the clerical force in the office, the railway company seems to have been in no wise responsible for it. At the time Comisky made the entry of both tracts and likewise at the time the defendants got their deed from Comisky, the railway company's preliminary survey was on file, and had been since in October, 1910. Compliance with the Act of Congress in filing copy of preliminary survey, and followed up by condemnation proceedings in a manner provided by law, had the effect of divesting title out of the Choctaw and Chickasaw nations of Indians, and investing title thereto in the railway company. It seems that the mere fact that the land appeared open for entry on the records of the Secretary of the Interior is not enough to destroy title acquired in a manner provided by law. If title to this land had passed to the railway company, it is apparent that the Secretary of the Interior no longer retained control over it to authorize or approve a conveyance of the land, or, as is sometimes said, he lost jurisdiction over it. The matter involved here is similar in principle to a condition arising where lands were included in a reservation made by the government. It would no longer be subject to entry or supervision by the Secretary of the

Interior, and to permit or approve an entry of such land would be an unwarranted assumption of power to control the entry.

In Whitehill v. Victorio Land & Cattle Co., 18 N. M. 520, 139 Pac. 184, L. R. A. 1918D, 593, the court held:

"An attempted exercise of jurisdiction by the Land Department in the acceptance of an entry including lands reserved from entry by the government, where the reservation from the entry appears as a matter of record in the land office, is void, as to the lands reserved, for the reason that it is an assumption of power in excess of its jurisdiction, and the same can be shown by a defendant in an action at law."

In Stalker v. Oregon Short Line Railroad Company, 225 U. S. 142, 56 L. Ed. 1027, the question under consideration was whether the railroad company had acquired title to certain lands under a government land grant as against subsequent preemption claimant where the land department had failed to strike the land included in the grant from entry. The court held:

"When the plat of station grounds was approved by the land department, the grounds so selected were segregated from the public lands, and it was the duty of the land department to withdraw the land so granted from the market. If a subordinate failed to make the proper notation by which this withdrawal would have been recorded, it is not the fault of the railroad company. In Van Wyck v. Knevals, 106 U. S. 360, 367, 27 L. Ed. 201, 203. 1 Sup. Ct. Rep. 336, this court said of the effect of the approval of a map of definite location: 'No further action is required of the company to establish a route. It then becomes the duty of the Secretary to withdraw the lands granted from market. But if he should neglect this duty. the neglect would not impair the rights of the company, however prejudicial it might prove to others. Its rights are not made dependent upon the issue of the Secretary's order, or upon notice of the withdrawal being given to the local land officers.' We therefore conclude that the subsequent issue of a patent to the land entered by Reed was subject to the rights of the railroad company theretofore acquired by approval of its station ground map. The patent is not an adjudication concluding the paramount right of the company. but in so far as it included lands validly acquired theretofore, was in violation of law, and inoperative to pass title."

To like effect is. also, Great Northern Railway Company v. Steinke et al.. 261 U. S. 119. 67 L. Ed. 564, where it was held:

"The claim on which Pollock received the certificate and patent was initiated more than two years after the new station grounds passed to the company under the approved

map. True, the local land officers neglected to note that disposal on the township plat and tract book in their office; but this did not prejudice or affect the company's title. * * * The effect of such omissions often has been considered by this court and always has been determined along the lines just indicated. It will suffice to refer to two of the cases. In Van Wyck v. Knevals, 106 U. S. 360, one party claimed under a land grant to a railroad company, and the other under a patent issued on a cash entry. The grant was to attach when the route of the road was definitely fixed, and the Secretary of the Interior was then to withdraw from market all lands falling within the grant. A map definitely fixing the route was filed by the company with the Secretary and was accepted by him, but the intended withdrawal was not sent to the local land office for half a month or more. During that interval the cash entry was allowed and a patent certificate issued thereon. This court sustained the claim under the grant as being first in time, and, in defining the rights which the company acquired through the filing and acceptance of the map, said p. 367: 'No further action is required of the company to establish the route. It then became the duty of the Secretary to withdraw the lands granted from market. But if he should neglect this duty, the neglect would not impair the rights of the company, however prejudicial it might prove to others'."

In United States v. Winona & St. P. R. Co. et al., 67 Fed. 948, the following rule is laid down:

"A patent or certificate of the land department for land over which that tribunal has no jurisdiction to determine the claims of applicants for, is absolutely void, and conveys no title. Land the title to which had passed from the government to another before the claim on which the patent was based was initiated * * * is of this character."

This rule has application here. The title to the land in question had passed to the railway company before the claim to title by Comisky was initiated. So long as the land was under control and supervision of the Secretary of the Interior, he had jurisdiction to consider, pass upon, and approve entry of the lands, but when the title once passed as provided by law, the Secretary, of the Interior lost jurisdiction and control, and his approval of entry is subject to be attacked as was done here.

In St. Louis Smelting & Refining Company v. Kemp et al., 104 U. S. 636. 26 L. Ed. 875, an action in ejectment, it was said:

"On the other hand, a patent may be collaterally impeached in any action, and its operation as a conveyance defeated, by showing that the department had no jurisdiction to dispose of the lands; that is, that

the law did not provide for selling them, or that they had been reserved from sale or dedicated to special purposes, or had been previously transferred to others. In establishing any of these particulars, the judgment of the department, upon matters properly before it is not assailed nor it the regularity of its proceedings called into question; but its authority to act at all is denied and shown never to have existed."

It is contended, however, that before the plaintiff is entitled to a judgment for possession, plaintiff should be required to prosecute an action to cancel the conveyances under which the defendants claim. The contention is thus stated:

"We contend that inasmuch as the defendants derive their title from the government, that an action in ejectment cannot be maintained against them, and if their title is paramount to the title of plaintiff that it will require an equitable action of cancellation to divest them of any rights they may have acquired from the government."

The contention assumes that the defendants acquired title to the property from the government, and that such title is paramount to that of the plaintiff. Neither of these assumptions is correct. We have just seen that the railway company acquired title through the condemnation proceedings prior to the entry made by Comisky, under whom the defendants claim. There is no question of insufficiency of the descriptions given in the condemnation proceedings, or failure to comply with the regulation as to the recordation of instruments, other than that the property was not withdrawn from entry. If the railway company had previously acquired title, the government had no title to convey, and the patents issued to Comisky conveyed nothing to him and were void. That being so, it was not necessary for the plaintiff to first prosecute an action for the cancellation of the instruments under which the defendants claimed, nor was it necessary in the suit filed to include therein a cause of action for the cancellation of the instruments.

It is contended, also, that the defendants should have been granted a new trial because of newly discovered evidence. The newly discovered evidence presented is certain communications addressed to Gabe E. Parker, Superintendent of the Five Civilized Tribes of Indians, one dated March 31, 1916, and another dated April 14, 1916, from the office of the Secretary of the Interior, in which it seems that an opinion was expressed that the purchasers of the lots were entitled to patents upon completion of payments. The records and correspondence in the office of the Superintendent of the Five

Civilized Tribes was as available before the trial of this cause as were they immediately afterwards. Copies of these letters can hardly fall within the rule of newly discovered evidence. We have examined the copies of the correspondence and are unable to see how such correspondence could be controlling or how these letters would have, or should have in any way changed the result of the trial. The trial court did not err in overruling the motion for a new trial based upon newly discovered evidence.

We conclude that the record conclusively shows that the property in controversy is owned by the plaintiff, and the direction given to the jury upon the question of the possession is supported by the evidence and must be upheld.

2. Upon the question of the reasonable rental value of the land the record is very unsatisfactory. The land in controversy is approximately 100 feet square, within the right of way of plaintiff's railway, and near the station house at the little town of Adamson, in Pittsburg county. The petition alleges that the reasonable rental value of the little square of land was $25 per month, and the cash value of the land is alleged to be $2,500. There was no evidence as to the value of the land other than the fact that plaintiff acquired it for a nominal consideration, and one of the defendants testified that they paid $75 for it. There was no proof that the land had any special value to the plaintiff, any more than any other 100 feet square of the right of way. An employe of the plaintiff testified that in his opinion the reasonable rental value of the 100 feet square was $25 per month, but no particular reason was assigned for fixing the rental at that amount. In the petition the sum of $300 is prayed for by way of damages, as the reasonable rental value of the land. Counsel for plaintiff express an opinion that plaintiff would possibly be entitled to $25 per month so long as defendants retain possession, which he said would be $450. The court directed the jury to return a verdict for rentals in the sum of $560. In the verdict and judgment damages for detention, based upon the reasonable rental value, is fixed at $650. As a matter of common knowledge this land could have no more than a nominal rental value. It appears to us that the directed verdict was shockingly excessive, and the jury, for some reason, added $90 more. The verdict and judgment for damages is greatly excessive. In no event could rentals as damages be taken into consideration beyond the date of the trial; and we are impressed that nominal rentals as damages was all that the

plaintiff was entitled to. So far as we are able to see from this record, the defendants were acting in good faith in believing they had acquired title to the land, at least they were able to trace their claim of title back to the government. They built a little cotton gin upon the land and ginned cotton, no doubt, and did something of a cotton seed business, and were, no · doubt, patrons of the plaintiff's railway. As to some of these matters there is no direct evidence, but the inferences are to be reasonably drawn from the record. It is indicated by plaintiff that this court may think that the judgment for damages is excessive, and counsel expresses a willingness to enter a remittitur for whatever amount the court may think is unjust, if the judgment can be otherwise affirmed as to the right to possession. We think that nominal damages up to the date of the trial is all that plaintiff was entitled to. The judgment that was entered is so excessive that it must be set aside. We think that $50 damages up to the date of the trial is sufficient. The question of whether or not the defendants are entitled to relief under the occupying claimants act is hereafter to arise, and concerning this matter we express no opinion, but the question of the reasonable rentals of the land since the trial will again, no doubt, arise, and can then be determined upon the hearing. The plaintiff should be required to remit the sum of $600 of its judgment for damages, and when this is done the judgment should otherwise be affirmed.

If the plaintiff shall file a remittitur in the sum of $600 within 20 days, we recommend that the judgment be otherwise affirmed. We recommend that if the remittitur be not filed, that the judgment of the trial court be reversed with directions to grant the defendants a new trial.

By the Court: It is so ordered.