253 F.2d 468
 CHICAGO AND NORTH WESTERN RAILWAY COMPANY, a corporation, and Elliott Construction Company, Inc., a corporation, Appellants,
v.
CONTINENTAL OIL COMPANY, a corporation, Appellee.
 No. 5657.
 United States Court of Appeals Tenth Circuit.
 February 12, 1958.
 
 Nye F. Morehouse, Chicago, Ill., and Leroy Hallman, Dallas, Tex. (R. D. Neely, Omaha, Neb., was with them on the brief), for appellants.
 W. J. Wehrli, Casper, Wyo. (A. T. Smith and F. E. Radloff, Denver, Colo., were with him on the brief), for appellee.
 Before MURRAH, LEWIS, and BREITENSTEIN, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 In this diversity litigation, the appellant railway company and its oil and gas lessee seek reversal of the trial court's judgment, holding, in effect, that the railroad acquired only an easement and not a limited fee title to lands within its right of way under the Act of March 3, 1875, 18 Stat. 482, 43 U.S.C.A. § 934 et seq.; and more particularly, that the railroad has no right to the oil, gas and other minerals underlying its right of way. See Continental Oil Co. v. Chicago & North Western Ry. Co., D.C., 148 F. Supp. 411.
 
 
 2
 The undisputed facts are that appellant's predecessor, another railroad company, complied in all respects with the provisions of the Act of 1875, supra, for the purpose of locating, constructing, maintaining, and operating its railroad through the public lands of the United States. The company's location map, filed with and approved by the Secretary of the Interior, designated a right of way 200 feet in width across the State of Wyoming, including the two 40-acre tracts in Converse County, with which we are here concerned. In 1903, appellant, Chicago and North Western Railway Company, acquired all of the rights of its predecessor, became the owner of the right of way, and has ever since continued to own and operate its railroad line across the adjoining two 40-acre tracts. In 1887, one of the 40-acre tracts was set aside for university purposes in the Territory of Wyoming, pursuant to the Act of February 18, 1881, 21 Stat. 326, and title to the tract became vested and remains in the State of Wyoming. In 1902, a patent was issued by the United States to one Sarah Isabel Bradley covering the other 40 acres, and this tract was acquired through mesne conveyances by Mountain Home Company.
 
 
 3
 In November 1916, Mountain Home executed an oil and gas lease on its 40-acre tract, which was subsequently assigned to appellee, Continental Oil Company, and remains in full force and effect. In June of that same year, the State leased its 40-acre tract for oil and gas purposes to R. B. Whiteside, and the tract has been continuously leased for oil and gas purposes, the existing lease being one issued in 1942 to Merritt Oil Corporation, and to which Continental obtained assignment. The trial court specifically found that continuously since 1917, Continental has been producing oil from both tracts of land, including the formations underlying the right of way — apparently without objection from the railway company.
 
 
 4
 In 1955, appellant railway company entered into a contract with appellant, Elliott Construction Company, Inc., authorizing it to drill oil wells upon its right of way in Converse County, and to produce and remove the oil therefrom, the railway reserving the right to take its royalty in kind. Elliott entered upon the right of way on the State's 40-acre tract in September or October 1955, and obtained a producing oil well thereon. No well for the production of oil and gas had been previously drilled upon any part of the right of way.
 
 
 5
 Soon after the commencement of the drilling of the well, Continental gave formal notice of its adverse claim to the oil and gas under the right of way by virtue of its leases, and about the time of the completion of the well, brought this suit to enjoin the railroad and its contracted from going upon the right of way for the purpose of prospecting for or producing oil and gas therefrom.
 
 
 6
 On appeal from a judgment in favor of Continental, the appellants acknowledge, as indeed they must, the decisional force of Great Northern Ry. Co. v. United States, 1942, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836, to the effect that the interest acquired by the railroad under the 1875 Act was merely an easement, without any right to the underlying oil and minerals. They earnestly contend, however, that for more than fifty years prior to the Great Northern decision, the courts had construed right of way grants under the 1875 and earlier acts to convey a limited fee with the incidental rights and remedies usually attending the fee; and that this settled construction established a rule of property under which the railroad acquired a vested and constitutionally protected interest, of which it could not be divested by a mere change in decisional law. In sum, the contention is that the Great Northern decision cannot in these circumstances operate retroactively to divest the railroad of the mineral rights incident to a limited fee under earlier decisions.
 
 
 7
 The first of the so-called "limited fee" cases construing the 1875 Act is Rio Grande Western Ry. Co. v. Stringham, 239 U.S. 44, 36 S.Ct. 5, 6, 60 L.Ed. 136, decided in 1915. Following earlier cases construing prior and different railroad right of way acts, the court did describe the nature of the grant under the 1875 Act as "neither a mere easement, nor a fee simple absolute, but a limited fee" which "carries with it the incidents and remedies usually attending the fee." The limited fee concept was recognized and perpetuated in Choctaw, O. & G. R. Co. v. Mackey, 256 U.S. 531, 41 S.Ct. 582, 65 L.Ed. 1076; and Noble v. Oklahoma City, 297 U.S. 481, 56 S.Ct. 562, 80 L.Ed. 816. And see also Richardson v. Midwest Refining Co., 39 Wyo. 58, 270 P. 154. But none of the cases directly involved title to the minerals under a railroad right of way, and Great Northern, which did involve such rights for the first time, expressly repudiated the Stringham case and those which followed it. In the first place, the court pointed out that the limited fee concept in the Stringham case rested upon prior decisions involving pre-1871 legislation, and that Stringham failed to heed the "sharp change in Congressional policy with respect to railroad grants after 1871"; and "is inconsistent with the language of the Act, its legislative history, its early administrative interpretation and the construction placed on it by Congress in subsequent legislation." The later limited fee cases were dismissed as mere dicta, based on the Stringham case.
 
 
 8
 In this posture, it may be doubted whether the so-called limited fee concept of title to railroad rights of way under the 1875 Act can be said to have ever established railroad ownership in the underlying minerals. It is somewhat difficult to perceive how a decision so incongruous with its administrative and legislative environment can be said to establish a rule of property capable of constitutional protection. Certainly the cases construing the so-called "lavish land grant acts" prior to 1871 cannot be relied upon for that purpose. Indeed, it is now affirmed that the "most that the `limited fee' cases decided was that the railroads received all surface rights to the right of way and all rights incident to a use for railroad purposes." United States v. Union Pacific R. Co., 353 U.S. 112, 77 S.Ct. 685, 689, 1 L.Ed.2d 693.
 
 
 9
 But, conceding the efficacy of the Stringham case to establish the limited fee concept as a rule of property under the 1875 Act, the appellants cannot claim any constitutional protection under it, since it was decided long after the railroad acquired its right of way. For the plainest of reasons, one cannot acquire a vested interest in a rule of property on which he did not rely when he acquired the interest he seeks to protect. Jackson v. Harris, 10 Cir., 43 F.2d 513.
 
 
 10
 Appellants seek to avoid the impact of the Great Northern case on the premise that unlike that case, this contest is between private parties; that this being so, the filing of the location map by the railroad pursuant to the 1875 Act effected an appropriation of all of the land within the right of way boundaries; and that the subsequent state selection and patent deed were ineffectual to convey any land or rights underlying the preempted right of way. The argument is that the filing and approval of the right of way location map was tantamount to a patent from the Government conveying a present absolute grant of the lands, subject only to its continued use for railroad purposes. The appellants cite and rely upon those early cases to the effect that the filing of a right of way location map operates to withdraw the right of way land from the public domain, and that subsequent homestead entries were subject to such right of way. i. e. Noble v. Union River Logging R. Co., 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123; Jamestown & Northern R. Co. v. Jones, 177 U.S. 125, 20 S.Ct. 568, 44 L.Ed. 698; Stalker v. Oregon Short Line R. Co., 225 U.S. 142, 32 S.Ct. 636, 56 L.Ed. 1027; Great Northern Ry. Co. v. Steinke, 261 U.S. 119, 43 S.Ct. 316, 67 L.Ed. 564; Rio Grande Western Ry. v. Stringham, supra. See also Missouri-Kansas-Texas Ry. Co. v. Roberts, 152 U.S. 114, 14 S.Ct. 496, 38 L.Ed. 377; Northern Pacific Ry. Co. v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044. This construction of the grant is said to be fortified by Wyoming law (see Richardson v. Midwest Refining Co., 39 Wyo. 58, 270 P. 154), and by the terms of the state oil and gas lease expressly reserving "all lands heretofore granted for Rights of Way and Easements"; and that the State of Wyoming and those claiming under it are bound by its terms, regardless of the nature of the statutory grant.
 
 
 11
 In the first place, we can find no valid basis for the inapplicability of Great Northern to a contest between parties other than the Government. None has been suggested. And see Missouri-Kansas-Texas R. Co. v. Ray, 10 Cir., 177 F.2d 454; Himonas v. Denver & R. G. W. R. Co., 10 Cir., 179 F.2d 171. In the second place, we regard the appropriation theory as merely another way of urging the limited fee concept. To be sure, the filing and approval of the location map pursuant to the 1875 Act did not operate to convey an estate greater than the statutory grant. Indeed, any attempt to do so would be ultra vires of the statute and ineffectual. The cases cited and relied upon do no more than establish the dominant and exclusive right of the railroad to the use of the right of way for railroad purposes. And see United States v. Union Pacific R. Co., supra. With this there can be no quarrel. But this suit does not have for its purpose or effect interference with the exclusive right of the railroad to occupy and use its right of way for all purposes for which it was granted. The appellee does not assert the right to go upon the right of way to exploit the underlying minerals. Instead, it seeks only to enjoin the railroad from trespassing on the servient estate. Nor do we think the reservation in the state lease operated to grant the railroad any rights not granted by the Federal Act. The phrase "all lands" as used in the lease clearly relates to the right of way easement.
 
 
 12
 The sweep of the Great Northern decision is also sought to be obviated on the theory of vested title in the underlying minerals by adverse possession, perfected long prior to that decision. The force of the argument is that the railroad took possession of the right of way upon the filing of the location map under color of limited fee ownership, and at all times possessed it as such owner openly and notoriously; that such limited fee ownership was recognized by the Wyoming decisions (see Richardson v. Midwest Refining Co., supra), and is now unassailable.
 
 
 13
 The conclusive answer is, we think, that the railroad never at any time held the mineral estate under the right of way adversely until it commenced the drilling of a well thereon. Upon the filing of the location map, the railroad acquired an easement for railroad purposes. The fee or servient estate, including the minerals, remained in the United States. See Himonas v. Denver & R. G. W. R. Co., supra. A severance of the minerals from the surface or dominant estate in the right of way was thereupon effected and the railroad's occupancy and possession thereof was not therefore adverse to the servient estate. See Ohio Oil Co. v. Wyoming Agency, 63 Wyo. 187, 179 P.2d 773; Himonas v. Denver & R. G. W. R. Co., supra; Milliron Oil Co. v. Connaghan, Wyo., 302 P.2d 256; Michigan Central R. Co. v. Garfield Petroleum Corp., 292 Mich. 373, 290 N.W. 833, 127 A.L.R. 507; Peterson v. Holland, Tex. Civ.App., 189 S.W.2d 94. True, the railroad fenced the right of way, made valuable improvements thereon, and let agricultural and grazing leases. But nothing done thereon was inconsistent with railroad uses. It did not manifest an intention to explore the underlying minerals. Instead, since 1917 the appellee Oil Company has asserted ownership and dominion therein by the drilling of wells on the abutting land and taking the oil therefrom. In no sense can the railroad be said to have acquired title by adverse possession.
 
 
 14
 Apart from its claimed fee ownership on any theory, the appellant railroad asserts the right to produce and use the oil and gas under the right of way for railroad purposes. The taking and using of the oil is said to be an appropriate incident to the dominant and exclusive grant. The right to use the oil under the right of way for railroad operations was asserted in the Great Northern case. i. e. see 315 U.S. at pages 266-270, 62 S.Ct. at pages 531-532. And, while the court did not discuss the point, we think the claim must have been rejected in the categorical statement that since the right of way was "but an easement, it has no right to the underlying oil and minerals." In any event, we do not regard the production of oil on the right of way an appropriate incident to the operation of a railroad, even though the refined product thereof might eventually be used for diesel fuel or other related uses.
 
 
 15
 Finally, estoppel is invoked here as a defense to the action. In essence, appellants assert that the appellees suffered and permitted the appellants to go upon the right of way and conduct the drilling operations, even to the point of negotiating with them for pipe line connections and for the purchase of the oil; that having thus acquiesced in these operations under color of title, they are now estopped to deny the railroad's right to produce and convert the oil. The record does not disclose that estoppel was affirmatively pleaded, or that it was ever injected as an issue in the trial of the case. This being so, it cannot be raised here for the first time. See Rule 8(c) F.R.C.P., 28 U.S.C.A.; Cummings v. Moore, 10 Cir., 202 F.2d 145; Wackerle v. Pacific Employers Ins. Co., 8 Cir., 219 F.2d 1, 52 A.L.R.2d 814.
 
 
 16
 We are not asked to decide the rights of the appellants as innocent improvers, and nothing here should be construed as decisive of any such rights.
 
 
 17
 The judgment is affirmed.